UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| AMANDA S. GILLESPIE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 1:14-CV-00356-MGG |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On November 14, 2014, Plaintiff Amanda S. Gillespie ("Gillespie") filed a complaint in this Court seeking reversal or remand of the Social Security Commissioner's Defendant Acting Commissioner of Social Security's ("Commissioner"), final decision denying her application for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. No. 1 at 1). On May 22, 2015, Gillespie filed her opening brief. (Doc. No. 19). On August 27, 2015, Defendant, Commissioner of Social Security ("the Commissioner"), filed a Memorandum in Support of the Commissioner's Decision requesting the Court to affirm the decision denying SSI and DIB. (Doc. No. 25). On November 05, 2015, Gillespie filed a reply brief. (Doc. No. 28). This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I. PROCEDURE**

On September 7, 2011, Gillespie filed an application for SSI and DIB with the Social Security Administration ("SSA") alleging disability beginning September 30, 2008. The SSA denied Gillespie's application initially on December 12, 2012, and then again on February 8,

2012, after reconsideration was granted. On August 6, 2013, a hearing was held before an administrative law judge ("ALJ") where Gillespie, Gillespie's fiancé Steve Newsome, and an impartial vocational expert appeared and testified. On January 14, 2014, the ALJ issued his decision finding that Gillespie was not disabled at Step Five of the evaluation and denied her application for DIB and SSI. On September 17, 2014, the Appeals Council denied Gillespie's request for review, making the ALJ's decision the final decision of the Commissioner. Through this action, Gillespie seeks judicial review of the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g).

## II. FACTS

Gillespie was born on February 25, 1975, making her 33 years old on the date of her SSI and DIB applications, and has at least a high school education. (Doc. No. 11 at 36). At the time of the August 2014 hearing, Gillespie was unemployed. Prior to the alleged onset date, Gillespie reportedly worked as a bench press operator and a certified nurse aide. (Doc. No. 21 at 2).

### A. Relevant Medical Evidence of Gillespie's Mental Impairments[1]

As a part of her disability application, Gillespie provided the ALJ with medical evidence from her mental health counselor, psychiatrists, nurse practitioner, and primary care physicians over the twelve years between November 2001 and October 2013—two months past the date of her hearing. Throughout this period, Gillespie was treated with a varying medication regimen for depression, bipolar disorder, anxiety disorder, and polysubstance abuse. She was

---

[1] Because Gillespie only alleges problems with the ALJ's analysis of her residual functional capacity related to her mental impairments, the Court need not outline evidence related to her physical impairments in this opinion.

2

hospitalized for brief periods in July 2007 for suicidal thoughts and in October 2013 for opiate withdrawal. The record shows that her symptoms ebbed and flowed as she was treated.

After submitting her DIB and SSI application, Gillespie was examined by State Agency physicians. In November 2011, Dr. Russell G. Coulter-Kern examined Gillespie diagnosing her with bipolar II disorder and social anxiety disorder. Dr. Coulter-Kern noted Gillespie's poor immediate but fair recent and past memory as well as her appropriate eye contact with a logical and persistent thought process. In February 2012, H. M. Bacchus, Jr., M.D., performed a physical consultative examination in which he assessed Gillespie's bipolar disorder and depression noting that she had a slightly depressed mood and an intact memory.

Of greatest relevance to this action, Gillespie was examined by State Agency psychologist, Benetta E. Johnson, Ph.D. in December 2011. On December 9, 2011, Dr. Johnson completed a Psychiatric Review Technique ("PRT") worksheet, in which she rated Gillespie's functional limitations related to the Paragraph B criteria involved in the Step Three Listing Analysis. On the PRT, Dr. Johnson opined that Gillespie had mild restrictions in maintaining social functioning and activities of daily living, moderate difficulty with maintaining concentration, persistence, and pace, and no episodes of decompensation of extended duration.

That same day, Dr. Johnson also completed a mental residual functional capacity ("MRFC") assessment intended to assist the ALJ in his RFC determination. In Section I of the MRFC form, entitled "Summary Conclusions," Dr. Johnson checked boxes in several categories assessing Gillespie's limitation in sustained concentration and persistence. In Section III of the MRFC form entitled "Functional Capacity Assessment," Dr. Johnson provided a narrative about Gillespie's mental limitations. In January 2012 and February 2012, State Agency psychologist,

3

Joseph A. Pressner, Ph.D., affirmed Dr. Johnson's opinions after reviewing the evidence in Gillespie's file to date.

B. **Hearing Testimony**

At the ALJ hearing, Gillespie testified that she was unable to work due to her inability to take care of herself by doing household chores or taking medications. She also expressed difficulty with concentration. Gillespie also testified that her symptoms were cyclical, and her depressive periods occurred five to six times per month. In addition, Gillespie explained that her medications and visitations with her psychiatrist every month helped her condition. She also noted that she lived with her four-year-old son and Steve Newsom ("Newsom"), her fiancé, and that she could drive to the gas station, grocery store, and doctor appointments. Furthermore, Gillespie testified that she could perform basic activities, including taking care of her dogs, watching television, taking her son to the park, and cleaning her house. Similar to Gillespie's testimony, Newsom testified that Gillespie would endure day-long crying spells and odd behavior, such as heating up their pans without any material inside the pans. Newsom further explained that Gillespie's depression and anxiety worsened during her depressive periods, resulting in her lack of attention and communication with her son.

C. **ALJ Opinion**

After the hearing, the ALJ issued a written decision reflecting the following findings. At Step One of the five-step disability analysis, the ALJ found that Gillespie had not engaged in substantial gainful activity since her alleged onset date of September 30, 2008. At Step Two, the ALJ found that Gillespie had the following severe impairments: depression, bipolar disorder, anxiety disorder, and history of polysubtance abuse. At Step Three, the ALJ found that Gillespie

4

did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. After defining Gillespie's RFC, the ALJ found at Step Four that Gillespie was unable to perform any past relevant work. At Step Five, the ALJ found that—considering Gillespie's age, education, work experience, and RFC—there are jobs that exist in significant numbers in the national economy that she could perform. Based on these findings, the ALJ determined that Gillespie had not been disabled from September 30, 2008, the alleged onset date, through February 13, 2015, the date of the ALJ's decision. Consequently, the ALJ denied DIB and SSI benefits to Gillespie. After the Appeals Council denied Gillespie's request for review, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review.

## III. ANALYSIS

### A. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 468 F.3d 513, 516 (7th Cir. 2001).

A reviewing court is not to substitute its own opinion for that of the ALJ or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

### B. Issue for Review

Gillespie seeks reversal and remand of the ALJ's decision, arguing that the ALJ's hypothetical to the Vocational Expert ("VE") at the hearing did not reflect the full extent of the moderate limitations he found in Gillespie's concentration, persistence, or pace. As such, Gillespie argues that the ALJ's Step Five analysis was improper. Notably, the ALJ's hypothetical incorporated all the limitations included in the ALJ's RFC determination. Therefore, the Court now reviews the ALJ's RFC analysis to determine whether Gillespie's arguments justify remand.

### C. Analysis

A claimant's RFC indicates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and their symptoms. 20 C.F.R. § 404.1545; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record and cannot ignore evidence that supports a disability finding. *Goble v. Astrue*, 385 Fed. App'x 588, 593 (7th

Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)); 20 C.F.R. § 404.1545. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p 1996.

The crux of Gillespie's challenge to the ALJ's decision is her claim that the RFC did not account for her moderate difficulties in concentration, persistence, and pace. Both an RFC and a hypothetical to the VE must account for all of a claimant's limitations, including deficiencies in concentration, persistence, and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). However, an RFC for simple or unskilled work does not necessarily or inherently capture all of a claimant's work-related mental limitations. *Id.* at 620. For instance, "employing terms like 'simple, repetitive tasks' [in an RFC and hypothethical] will not necessarily exclude from the VE's consideration [] positions that present significant problems of concentration, persistence, and pace." *Id.*

Nevertheless, there is no *per se* requirement that an RFC and hypothetical must include the specific terminology of "concentration, persistence, and pace." *Id.* at 619. Moreover, a claimant's moderate limitations in concentration, persistence, or pace do not automatically establish that a claimant cannot satisfactorily function to perform available jobs. *See Givens v. Colvin*, 551 Fed. App'x 855, 862 (7th Cir. 2013).

Gillespie does not disagree with these general rules, but argues that the ALJ failed to include all of Dr. Johnson's findings—as noted in her MRFC dated December 9, 2011, and later

affirmed by Dr. Presser—about Gillespie's limitations of concentration, persistence, and pace into the RFC and hypothetical. The ALJ held that Gillespie retained the RFC to

> perform a full range of work at all exertional levels with the following limitations: [Gillespie] is limited to simple, routine, and repetitive tasks. [Gillespie] can maintain the concentration required to perform simple tasks. [Gillespie] is limited to low stress work defined as requiring only occasional decision making and only occasional changed in the work setting. [Gillespie] can tolerate predictable changes in the work environment.

Doc. No. 11 at 30. In Section I of her MRFC, however, Dr. Johnson checked boxes assessing Gillespie's abilities related to "Sustained Concentration and Persistence" that included, among other things, findings that Gillespie was moderately limited in the categories of (1) ability to maintain attention and concentration for extended periods; (2) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Doc. No. 11 at 396–97.

Gillespie acknowledges the RFC's reference to her ability to "maintain the concentration required to perform simple tasks" in the RFC, but argues that the RFC is incomplete because it does not account for her limitations related to attention, regular attendance, punctuality, and rest periods reflected in Dr. Johnson's opinion. On the other hand, the Commissioner contends that the ALJ's RFC and hypothetical mirrored the Dr. Johnson's opinion making them both proper.

In support of remand, Gillespie cites *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). In *Varga*, the plaintiff challenged the ALJ's hypothetical question to the VE, alleging it was flawed because it did not account for Varga's moderate difficulties in concentration, persistence,

and pace that the State Agency psychologist noted in Section I of the MRFC form he completed. 794 F.3d at 813. The Seventh Circuit held that the ALJ committed reversible error because he did not address all of the moderate limitations in concentration, persistence, and pace in his hypothetical question to the VE. *Id.* at 814. The court reasoned that there were seven areas related to concentration, persistence, and pace, identified by the State Agency psychologist in the Section I of the MRFC form, in which the claimant was moderately limited but that the ALJ failed to incorporate into the RFC and hypothetical. *Id.*

Gillespie, however, fails to discuss a fact in this case that is significantly different than *Varga*. The standard MRFC forms used by the State Agency psychologist in both *Varga* and this case include Section I, which provides checkboxes for the reporting of claimant limitations in pre-identified categories, and Section III, which provides space for the psychologist to opine narratively as to the claimant's mental RFC. In *Varga*, the State Agency psychologist included no narrative opinion as to the claimant's RFC in Section III. Here, however, Dr. Johnson opined in Section III that:

> The evidence suggest that [Gillespie] can understand, remember, and carry-out simple tasks. [Gillespie] can relate on at least a superficial basis. The claimant can attend for sufficient periods of time to complete simple tasks. [Gillespie] can manage light stresses involved in work related tasks. [Gillespie] can manage unskilled tasks.

Doc. No. 11 at 398.

The court in *Varga* acknowledged the importance of this distinction in response to the Commissioner's argument that Section I of the MRFC is "merely a worksheet to aid doctors in deciding the presence and degree of functional limitations" and that "the ALJ is only required to include findings made at Section III[, the narrative portion,] of the MRFCA form, in which the

9

doctor is to 'translate' his or her worksheet observation into a mental RFC." *Id*. at 816. Specifically, the court stated that "an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." *Id*. The court also noted that the Section I "worksheet observations" may be "less useful to an ALJ than a doctor's narrative RFC assessment," but nevertheless held that they cannot be ignored. *Id*. Without any Section III narrative opinion to compare to the State Agency psychologist's Section I observations, the court concluded that the ALJ committed reversible error by failing to account for the Section I observations about concentration, persistence, and pace in the RFC and hypothetical. *Id.*

As such, the Court cannot determine whether the ALJ improperly excluded Dr. Johnson's Section I observations from Gillespie's RFC without considering the more nuanced question of whether Dr. Johnson's narrative in Section III adequately encapsulated and translated her Section I checkbox-findings about Gillespie's limitations in concentration, persistence, and pace to the extent that the ALJ could have relied on the Section III narrative RFC without having to incorporate all of the limitations identified in the Section I checkboxes. *See id*.; *see also Goo v. Colvin*, Case No. 15 C 5858, 2016 WL 3520191, at *9–*10 (N.D. Ill. June 28, 2016); *Kraus v. Colvin*, No. 13-C-0578, 2014 WL 1689717, at *16 (E.D. Wis. Apr. 29, 2014); *Lichtsinn v. Astrue*, Cause No.: 1:08-cv-307, 683 F. Supp. 2d 811, 821 (N.D. Ind. 2010). In some cases where the consulting expert's mental RFC restricts the claimant to the same limitations incorporated in the ALJ's RFC and hypothetical, the ALJ commits no legal error. *Lichtsinn*, 683 F. Supp. 2d at 821. However, when an ALJ fails to mention areas where the State Agency

psychologist finds moderate limitations in reliance on even an adequately translated mental RFC, the court cannot be unconcerned. *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014).

In this case, the RFC and hypothetical mirrored the "simple tasks" and "low stress work" limitations Dr. Johnson included in her Section III mental RFC narrative. Yet neither Dr. Johnson's mental RFC nor the ALJ's RFC and hypothetical reflect fully Gillespie's limitations in concentration, persistence, and pace as identified by Dr. Johnson Section I of the MRFC form. Missing from both are any references to or translations of Gillespie's moderate limitations in performing within a schedule, maintaining regular attendance, being punctual, completing normal work without interruptions from psychologically based symptoms, or performing at a consistent pace without unreasonable rest periods. Even though the ALJ's opinion discusses thoroughly a wide range of medical evidence included in the record, it fails to account for the full range of moderate limitations in concentration, persistence, and pace identified by Dr. Johnson.

Standing alone, the ALJ's omission of moderate limitations without explanation is an error of law justifying remand. However, the ALJ has also failed to build a logical bridge between the evidence in the record, particularly Dr. Johnson's opinion reflected in Section I of the MRCA, and the RFC. As such, the ALJ's RFC determination is not supported by substantial evidence and must be remanded for further proceedings.

**IV.  CONCLUSION**

For the reasons stated above, the Court now **GRANTS** Gillespie's request to remand this case. [Doc. No. 19]. This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. The Clerk is **DIRECTED** to terminate the case.

**SO ORDERED.**

Dated this 4th day of October, 2016.

S/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
